GMP:KMP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

DAVID RICHMOND,

          Defendant.

- - - - - - - - - - - - - X

15-88 M

C O M P L A I N T

(21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

      KEVIN DUBOIS, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

      On or about October 29, 2014, within the Eastern District of New York and elsewhere, the defendant DAVID RICHMOND did knowingly and intentionally conspire to distribute and possess with the intent to distribute a substance containing one kilogram or more of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      (Title 21, United States Code, Section 846)

      The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.  I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been involved in the investigation of numerous cases involving the distribution of narcotics. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2.  For the past year, DEA agents have been investigating a narcotics distribution ring in New York City involving, among others, the defendant DAVID RICHMOND. Using various investigative techniques, including a confidential source ("CS")[2], investigators learned that RICHMOND is the head of a heroin distribution organization in the New York City. The CS has informed investigators that RICHMOND distributes heroin to his customers in New York City with the assistance of RICHARD DEAN.[3] Specifically, the CS has advised that RICHMOND arranges the sale of heroin directly with his customers, and DEAN delivers narcotics to RICHMOND's customers and receives payment from RICHMOND's customers on RICHMOND's behalf. According to the CS, between

---

[2] The CS was arrested in Staten Island, New York on June 4, 2014 for possessing with intent to distribute methamphetamines, in violation of federal law. The CS has provided information to law enforcement officers, and the information has proven to be reliable. The CS has been cooperating with law enforcement authorities in the hope of receiving leniency at sentencing. Information provided by the CS has, among other things, led to the arrest of RICHMOND's associate, RICHARD DEAN, who, as set forth below, assisted RICHMOND in distributing narcotics throughout the New York City metropolitan area. In addition, the CS has provided information to federal law enforcement officers in Baltimore, Maryland, which has assisted officers in obtaining authorization to wiretap telephones during a pending investigation.

[3] On October 29, 2014, DEAN was arrested in connection with this investigation, and charged with conspiring to distribute heroin, in violation of 21 U.S.C. § 846. The charges against DEAN are pending.

3

2012 and 2014, he/she purchased heroin from RICHMOND on several occasions, and as a result of these transactions, owed a debt to RICHMOND of at least $100,000 in United States currency. For example, on or about June 12, 2014, the CS paid DEAN approximately $26,000 for heroin that he/she had previously received from DEAN, and on or about June 23, 2014, DEAN delivered approximately 1 kilogram of heroin to the CS on RICHMOND's behalf.

3. Subsequently, RICHMOND and the CS met to discuss the CS's drug debt, including the $26,000 payment the CS had made to DEAN on June 12, 2014. During this meeting, which was recorded by law enforcement officers, the following conversation took place between the CS and RICHMOND:

| | |
|---|---|
| CS: | Just so you know the delay, I seen our friend maybe a week, a week or so ago, after I saw him I went down and I put it where it needed to be. I put it where it needed to be, that one dude that I see, he's a little spooked saying that he's seeing things so just to be on the safe side I backed up just to see what's going on. |
| RICHMOND: | He's seeing police things? |
| CS: | Yeah. |
| RICHMOND: | Ok. |
| CS: | At least he feels that way. |
| RICHMOND: | Ok. |
| CS: | So I told him you know that's cool so he let me know so I really haven't been going the way I normally be going. |
| RICHMOND: | Right right. |
| CS: | So, but I'll be back down Monday or so. |
| RICHMOND: | Right right. |
| CS: | You know, see where we at [inaudible][?] |

|  |  |
|---|---|
| RICHMOND: | Right, cuz it's good I know it's good. |
| CS: | Yeah, oh he's definitely got it, he's definitely got it. |
| RICHMOND: | Yeah it's good. |
| CS: | He told me I gave him 26 so that clears that, so I think we are at 65. . .   65, 68. |
| RICHMOND: | And 45. |
| CS: | Right. |
| RICHMOND: | Yeah. |

4. Based on my experience and knowledge of this investigation – including my conversations with the CS – I believe that during this encounter, RICHMOND and the CS discuss the debt the CS owed to RICHMOND for narcotics he/she purchased from RICHMOND. In particular, I believe that the CS told RICHMOND that he/she had met with DEAN in or about the week of June 23, 2014 to purchase heroin (i.e., "I seen our friend a maybe a week, a week or so ago"); and that after buying the heroin from DEAN, the CS delivered the heroin to a customer (i.e., "after I saw him I went down and I put it where it needed to be.   I put it where I needed to be, that one dude that I see").   I believe that the CS then told RICHMOND that when he/she met the customer, the customer indicated that he was concerned that law enforcement officers were monitoring his narcotics-related activities (i.e., "that one dude that I see, he's a little spooked saying that he's seeing things so just to be on the safe side I backed up just to see what's going on").   RICHMOND then asked if the CS's customer was concerned about law enforcement (i.e., "He's seeing police things?"), and the CS responded affirmatively (i.e., "Yeah").   Thereafter, I believe that the CS told RICHMOND that he would re-visit the customer in about a week to see if the customer distributed the heroin (i.e., "So, but I'll be back

down Monday or so"; "you know, see where we at"), and RICHMOND confirmed that he understood (i.e., "Right right"; "Right right"). The CS then told RICHMOND that DEAN said that the CS had paid him approximately $26,000 for heroin supplied by RICHMOND (i.e., "He told me I gave him 26 so that clears that"), and that as a result of this payment, the CS owed RICHMOND approximately $65,000 or $68,000 (i.e., ". . . so I think we are at 65. . . 65, 68"). RICHMOND then replied by stating that the CS also owed him an additional $4,500 (i.e., "And 45"), and the CS confirmed that he/she understood (i.e., "Right").

5. On or about October 28, 2014, the CS called RICHMOND to arrange a meeting in the Eastern District of New York to pay the debt that he/she owed to RICHMOND. During the call, which was consensually recorded by law enforcement officers, RICHMOND agreed to meet the CS in Queens, New York. Subsequently, the CS advised RICHMOND that he/she had $100,000, and RICHMOND responded by stating that he would meet the CS in Queens the following day.

6. On October 29, 2014, law enforcement officers met the CS at a pre-determined location, where they searched the CS and his/her vehicle. The search yielded negative results. Law enforcement officers then equipped the CS with a recording device, and a white bag containing approximately $100,000 of artificial United States currency. Thereafter, law enforcement officers followed the CS to the vicinity of 69-35 Astoria Boulevard, Queens, New York, where they performed surveillance. While performing surveillance, the officers observed RICHMOND drive to the vicinity of Ditmars Boulevard, near 70th Street in a silver Bentley, bearing Pennsylvania license plate number JKW 2129. The officers then observed RICHMOND exit the vehicle and enter the Jackson Hole Diner. The officers then observed the CS park the vehicle he/she was driving and enter the Jackson

6

Hole Diner. At approximately 2:40 p.m., the officers observed the CS, RICHMOND and two of RICHMOND's associates exit the Jackson Hole Diner and walk along 70th Street towards Ditmars Boulevard. The officers then observed RICHMOND and his two associates congregate near the CS's vehicle, which was located near RICHMOND's vehicle. Thereafter, the officers saw RICHMOND open the trunk of his vehicle, and the CS place the white bag containing the $100,000 in artificial currency into the trunk of RICHMOND's vehicle. Moments later, the CS entered his/her vehicle and departed. Shortly thereafter, law enforcement officers approached RICHMOND's vehicle, and placed RICHMOND and his two associates under arrest.

7.  After arresting RICHMOND, law enforcement officers read him the Miranda warnings. RICHMOND waived his Miranda rights and agreed to speak with the officers without an attorney present. Subsequently, RICHMOND signed a written consent form authorizing officers to search his residence, which is located in East Stroudsburg, Pennsylvania.

8.  Officers approached RICHMOND's residence at approximately 8:00 p.m., on October 29, 2014. As they approached the residence, they observed a woman, who they subsequently identified as RHONDA GARDNER, moving throughout the house. After approximately 5 minutes, GARDNER answered the front door to the residence. The officers identified themselves to GARDNER, and she invited them into the residence. The officers then advised GARDNER that RICHMOND was in custody and had provided law enforcement officers with consent to search the residence. Shortly thereafter, the officers conducted a security sweep of the residence for officer safety. At the time, no other individuals were present in the residence. While one of the officers was performing the security sweep, he/she

observed water flowing from a faucet in the master bathroom, and water on the floor. The officer also noticed a small amount of white powder and a torn plastic bag located on the sink near the faucet. The white powdery substance later field-tested positive for the presence of cocaine. The officers then obtained a warrant to search the residence.[4] Upon obtaining the search warrant, the officers searched the residence and discovered approximately 8 kilograms of heroin, five firearms and two sound suppressors (also known as "silencers"), $70,703 in United States currency and approximately $100,000 in gold coins.

       9.       After RICHMOND was arrested, he was transported to a DEA facility for processing. During this time, agents once again read RICHMOND the Miranda warnings. RICHMOND waived his Miranda rights and agreed to speak with agents without an attorney present. During this conversation, RICHMOND stated, in substance and in part that he was

---

[4] The search warrant was authorized by the Honorable Karoline Mehalchick, United States Magistrate Judge, Middle District of Pennsylvania on October 29, 2014.

8

involved in the distribution of heroin, that the 8 kilograms of heroin at his residence belonged to him, and that the firearms located in his residence belonged to him.

WHEREFORE, your deponent respectfully requests that the defendant DAVID RICHMOND, be dealt with according to law.

S/ Kevin Dubois

_____
KEVIN DUBOIS
Special Agent, Drug Enforcement Administration

Sworn to before me this
30th day of January, 2015

S/ Roanne Mann

_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK